1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

RUTH MARTIN,

               Plaintiff,

    v.

SEPHORA USA, INC.,

               Defendant.

Case No.  1:22-cv-01355-JLT-SAB

FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING IN PART MOTION TO DISMISS

(ECF Nos. 12, 14, 16, 17, 18)

**OBJECTIONS DUE WITHIN FOURTEEN DAYS**

17
18
19
20
21
22
23
24
25

      Plaintiff Ruth Martin ("Plaintiff") initiated this putative class action on October 23, 2022. (ECF No. 1.)  Currently before the Court is Defendant Sephora USA, Inc.'s ("Defendant") motion to dismiss.  (ECF No. 12.)  The matter was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c)(7).  (ECF No. 15.)  On March 24, 2023, finding this matter suitable for decision without oral argument, Local Rule 230(g), the Court vacated the hearing set for March 29, 2023.  (ECF No. 20.)  Having considered the moving, opposition, and reply papers, the declarations and exhibits attached thereto, as well as the Court's file, the Court issues the following findings and recommendations recommending granting Defendant's motion to dismiss, without prejudice.

26
///
27
///
28
///

# I.

## RELEVANT BACKGROUND

The instant putative diversity class action is premised on claims that Defendant secretly wiretaps the private conversations of everyone who communicates through the chat feature at www.sephora.com, and allows at least one third party to eavesdrop on such communications to harvest data for financial gain.[1]  (See Compl. at 2, ECF No. 1.)

### A.     Plaintiff's Allegations

Plaintiff alleges the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630 *et seq.*) prohibits both wiretapping and eavesdropping of electronic communications without the consent of all parties to the communication.  (Id. at ¶ 8.)  Plaintiff alleges compliance with CIPA is "easy" and the majority of website operators comply by conspicuously warning visitors when their conversations are being recorded or if third parties are eavesdropping on them.   (Id.) However, Plaintiff alleges, Defendant ignores CIPA, and instead wiretaps the conversations of all website visitors and allows a third party to eavesdrop on the conversations in real time during transmission.  (Id. at ¶ 9.)  Plaintiff maintains Defendant's wiretapping and eavesdropping are not incidental to the act of facilitating e-commerce, nor are they undertaken in the ordinary course of business; but instead, the actions violate both industry norms and the legitimate expectations of consumers.  (Id. at ¶ 10.)  More specifically, Plaintiff alleges that eight in ten Americans believe that companies do not collect or share consumer data gathered online, and seven in ten believe that they remain anonymous when engaged in online activities like web browsing and chatting. (Id. at ¶ 10 n.2.)

To enable the alleged "wiretapping," Defendant has embedded code into its chat feature that automatically records and creates transcripts of all chat conversations.  (Id. at ¶ 11.)  To enable the alleged "eavesdropping," Defendant allows "Hubspot and/or Salesforce" (independent third-party vendors) "to secretly intercept (during transmission and in real time), eavesdrop upon, and store transcripts of Defendant's chat communications with unsuspecting website visitors...."

---

[1] For purposes of the instant motion, the Court considers the allegations as they pertain only to Plaintiff, as the issue of class certification is not currently before the Court.

1  (Id.)  Plaintiff alleges that Defendant neither informs visitors of this conduct, nor obtains their

2  consent to do so.  (Id. at ¶ 12.)  Plaintiff alleges that the chat conversations between website

3  visitors and Defendant are "private and deeply personal," that such visitors "often share highly

4  sensitive personal data with Defendant via the website chat feature," and that they would be

5  "shocked and appalled to know that Defendant secretly records those conversations, and would be

6  even more troubled to learn that Defendant allows a third party to eavesdrop on the conversations

7  in real time under the guise of 'data analytics.' "  (Id. at ¶¶ 11, 13.)

8          With respect to Plaintiff, specifically, Plaintiff asserts she is a consumer privacy advocate

9  who is both "genuinely interested in learning more about the goods and services offered by

10  Defendant," and is a " 'tester' who works to ensure that companies abide by the privacy

11  obligations imposed by California law."  (Id. at ¶ 15.)  Plaintiff alleges she visited Defendant's

12  website within the past year via her smartphone (i.e., "a cellular telephone[] with an integrated

13  computer to enable web browsing") and had a conversation with Defendant via its website chat

14  feature.  (Id. at ¶ 17; see also id. at ¶ 13.)  Defendant did not inform Plaintiff that it was recording

15  their conversation or "allowing, aiding, and abetting a third party to intercept and eavesdrop on

16  them in real time."  (Id. at ¶ 19.)  Plaintiff did not learn about the foregoing until after the

17  conversation was completed and "additional, highly technical research was completed."  (Id.)

18  Further, Plaintiff alleges Defendant did not obtain express or implied consent prior to the

19  purported wiretapping and eavesdropping.  (See id. at ¶ 20.)  Plaintiff claims Defendant's actions

20  violated §§ 631(a) and 632.7 of CIPA.  (Id. at ¶¶ 27–40.)

21          Plaintiff seeks to bring a putative class action based on these allegations.

22          **B.      Procedural Posture**

23          On October 23, 2022, Plaintiff filed the operative complaint, asserting causes of action for

24  violations of CIPA and seeking class certification, declaratory relief, injunctive relief, statutory

25  and punitive damages, prejudgment interest, and attorneys' fees and costs.  (ECF No. 1 at 7–11.)

26  Defendant moved to dismiss the complaint, with prejudice, on January 24, 2023.  (ECF No. 12.)

27  Plaintiff opposed the motion on February 7, 2023 (ECF No. 14), concurrently submitting a

28  request for judicial notice of an order issued in the Central District of California case Byars v.

Goodyear Tire and Rubber Co. (Goodyear), No. 5:22-cv-01358-SSS-KKx (C.D. Cal. Feb. 3, 2023) (ECF Nos. 14-1, 14-2).  On February 17, 2023, Plaintiff filed a notice of supplemental authority, with respect to the exact same Central District order that is attached to the request for judicial notice in her oppositional brief.  (ECF No. 16.)  Also on February 17, 2023, Defendant filed a reply to Plaintiff's opposition.  (ECF No. 17.)  On March 21, 2023, Defendant filed a notice of supplemental authority, regarding additional rulings from the Central District of California in cases Licea v. Cinmar, LLC (Licea I), No. CV 22-6454-MWF (JEM), 2023 WL 2415592 (C.D. Cal. Mar. 7, 2023), Licea v. Am. Eagle Outfitters, Inc. (Licea II), No. EDCV 22-1702-MWF (JPR), 2023 WL 2469630 (C.D. Cal. Mar. 7, 2023), and Cody v. Boscov's Inc., No. 8:22-cv-143-SSS-KKx, 2023 WL 2338302 (C.D. Cal. Mar. 2, 2023).  (ECF No. 19.)  The Court notes this matter is fully briefed and the motion to dismiss is deemed submitted.

## II.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  See Ashcroft v. Iqbal (Iqbal), 556 U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim … is and the grounds upon which it rests."  Bell Atlantic v. Twombly (Twombly), 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true.  Cruz v. Beto, 405 U.S. 319, 322 (1972).  A court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  Retail Clerks Int'l Ass'n v. Schermerhorn (Retail Clerks), 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds

4

showing entitlement to relief." Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." U.S. ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citation omitted); see also id. at 679–79 ("Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555; see also Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the … laws in ways that have not been alleged." Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 679 (quoting Twombly, 550 U.S. at 570).  This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.  While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." Id. at 678.  Thus, only where a plaintiff has failed to "nudge[] [his or her] claims … across the line from conceivable to plausible," is the complaint properly dismissed. Id. at 680.

///

///

///

///

**III.**

**DISCUSSION**

**A.      Request for Judicial Notice**

The Court generally may not look beyond the four corners of a complaint in ruling on a Rule 12(b)(6) motion, with the exception of documents incorporated into the complaint by reference, and any relevant matters subject to judicial notice.  See Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007); Lee v. City of L.A., 250 F.3d 668, 688–89 (9th Cir. 2001) (court may take judicial notice of "matters of public record").

Under the doctrine of incorporation by reference, the Court may consider not only documents attached to the complaint, but also documents whose contents are alleged in the complaint, provided the complaint "necessarily relies" on the documents or contents thereof, the document's authenticity is uncontested, and the document's relevance is uncontested.  Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010); see Lee, 250 F.3d at 688–89; see also Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999)).  The purpose of this rule is to "prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based." Swartz, 476 F.3d at 763 (internal quotation marks omitted).

A court may also take judicial notice of "a fact that is not subject to reasonable dispute because it is generally known within the trial court's territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).  Proper subjects of judicial notice when ruling on a motion to dismiss include legislative history reports, see Anderson v. Holder, 673 F.3d 1089, 1094, n.1 (9th Cir. 2012); court documents already in the public record and documents filed in other courts, see Holder v. Holder, 305 F.3d 854, 866 (9th Cir. 2002); and publicly accessible websites, see, e.g., Caldwell v. Caldwell, No. C 05-4166 PJH, 2006 WL 618511, at *4 (N.D. Cal. Mar. 13, 2006) (UC Berkeley Museum of Paleontology website); Wible v. Aetna Life Ins. Co., 375 F. Supp. 2d 956, 965–66 (C.D. Cal. 2005) (amazon webpage for books written by expert doctor); Daniels–Hall v. Nat'l. Educ. Ass'n, 629 F.3d 992, 998–99 (9th Cir. 2010) (information displayed on government

1  websites).

2         1.    <u>Plaintiff's Request for Judicial Notice</u>

3        Plaintiff requests the Court take judicial notice of an order issued in the Central District of

4  California case <u>Byars v. Goodyear Tire and Rubber Co.</u>, in which the court denied a motion to

5  transfer/motion to dismiss the first amended complaint in which a claim for violations of CIPA §

6  631(a) was raised.  (ECF Nos. 14, 14-1, 14-2; <u>see also</u> ECF No. 16 (notice of supplemental

7  authority identifying exact same order).)

8        Plaintiff's request for judicial notice is granted.  Fed. R. Evid. 201(b) (the court may take

9  judicial notice of "adjudicative facts," such as court records, pleadings, etc., and other facts not

10  subject to reasonable dispute and "capable of accurate and ready determination by reference to

11  sources whose accuracy cannot be reasonably questioned"); <u>see also</u> <u>Holder</u>, 305 F.3d at 866;

12  <u>Bennett v. Medtronic, Inc.</u>, 285 F.3d 801, 803 n.2 (9th Cir. 2002) ("[W]e may take notice of

13  proceedings in other courts, both within and without the federal judicial system, if those

14  proceedings have a direct relation to matters at issue") (internal quotation omitted).

15         2.    <u>Defendant's Request for Judicial Notice</u>

16         **a.**    **Supplemental Authorities**

17        Defendant has also submitted a notice of supplemental authorities pursuant to Local Rule

18  230(m)(2), which Defendant requests the Court consider in support of the motion to dismiss.

19  (ECF No. 19.)   Defendant's case authorities include orders issued by the Central District of

20  California in the following cases: (1) <u>Licea I</u>, 2023 WL 2415592, at *1 (ECF No. 19 at 3–21 (Ex.

21  A) (dismissing claims based on first and second clauses of § 631(a) with leave to amend;

22  dismissing § 632.7 claim without leave to amend); (2) <u>Licea II</u>, 2023 WL 2469630, at *1 (ECF

23  No. 19 at 22–37 (Ex. B) (dismissing claims based on first and second clauses of § 631(a) with

24  leave to amend)); and (3) <u>Cody</u>, 2023 WL 2338302, at *1 (ECF No. 19 at 38–44 (Ex. C)

25  (dismissing § 631(a), clause one, claim with prejudice; dismissing § 631(a), clause four, claim

26  and § 632.7 claim with leave to amend)).  To the extent Defendant requests the Court judicially

27  notice the attached orders, Defendant's request is granted for the same reasons previously

28  articulated.  <u>Holder</u>, 305 F.3d at 866; <u>Bennett</u>, 285 F.3d at 803 n.2.

### b.    Screenshot of Website Chat Box

Defendant does not submit a formal request for judicial notice, but instead includes a copy of a "screenshot"[2] of its website chat box into the body of its motion to dismiss and suggests in a footnote that the Court may judicially notice this screenshot which was not included in Plaintiff's complaint based on the incorporation by reference doctrine.  (See ECF No. 12 at 14–16, n.2.)  Defendant seeks to include the screenshot in support of its argument that Plaintiff consented to her chat being recorded because she proceeded to utilize the chat screen, even after viewing the visible disclaimer at the bottom of the chat box that "Sephora may record this chat," alongside a link to Sephora's privacy policy.  The Court construes the footnote as Defendant's request for judicial notice.  (Id. at 15 n.2.)

However, the Court finds Defendant's screenshot of its chat feature does not fall under the incorporation by reference doctrine.  While Defendant suggests the screenshot represents the chat feature used by Plaintiff that is the subject of the instant complaint, the screenshot is in no way authenticated, and the Court cannot say it is not subject to reasonably dispute.  In fact, Plaintiff does dispute the accuracy and authenticity of the screenshot in her oppositional brief.  (See ECF No. 14 at 30–32.)  Importantly, there is no way to verify whether the screenshot in Defendant's brief constitutes an accurate portrayal of the chat box Plaintiff used at the time of the incident (sometime prior to October 23, 2022); Defendant does not provide the date from which the screenshot was recorded, whereas Defendant's separate reference to its privacy policy indicates the Sephora website was last visited January 24, 2023.  (See ECF No. 12 at 16.)  Thus, it is possible that the chat box Plaintiff utilized in 2022 did not include the same warning notice that appears on the chat box image taken on or around January 24, 2023.  Accordingly, Defendant's request for judicial notice of the chat box screenshot must be denied.

### B.    Motion to Dismiss Plaintiff's CIPA Claims

The California Invasion of Privacy Act, Cal. Penal Code §§ 630, et seq., California's anti-wiretapping    and    anti-eavesdropping    statute,    prohibits    unauthorized    interceptions    of

---

[2] The Court refers to this insert into Defendant's brief as a "screenshot," however, Defendant does not identify it as such, and the Court cannot conclude with certainty that the picture pasted in is an actual screenshot of Sephora's website, or some form of demonstrative rendition thereof.

communications in order "to protect the right of privacy." Cal. Penal Code § 630.  The California Legislature enacted CIPA in 1967 in response to "advances in science and technology [that] have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications." Id.  The purpose of CIPA is "to protect the right of privacy by, among other things, requiring that all parties consent to a recording of their conversation."  Smith v. LoanMe, Inc., 11 Cal. 5th 183, 191 (2021).

The complaint asserts two causes of action under CIPA, which provides for civil in addition to criminal liability:[3] (1) violations of CIPA under § 631(a); and (2) violations of CIPA under § 632.7.  (ECF No. 1 at 7–10.)  Defendant moves to dismiss the complaint in its entirety (inclusive of Plaintiff's claim for punitive damages), with prejudice, on the basis that Plaintiff fails to allege facts sufficient to state a cognizable claim under Rule 12(b)(6).  (ECF No. 12.)

### 1.   Federal Rule of Civil Procedure 8

As an initial matter, the Court notes the complaint runs afoul of Rule 8's notice pleading requirement that the complaint "give the defendant fair notice of what the claim … is and the grounds upon which it rests."  Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). More specifically, to comply with Rule 8, a complaint should clearly and fully set forth "who is being sued, for what relief, and on what theory, with enough detail to guide discovery." McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996).  Further, "each claim founded on a separate transaction or occurrence … must be stated in a separate count." Fed. R. Civ. P. 10(b); see also Hendrix v. Health & Soc. Servs. of Solano Cnty., No. 2:15-cv-02689-MCE-EFB PS, 2017 WL 4004168, at *5 (E.D. Cal. Sept. 12, 2017) (requiring "clear headings to delineate each claim alleged and against which defendant"), report and recommendation adopted, 2017 WL 4340166 (E.D. Cal. Sept. 29, 2017).  "Shotgun pleading occurs when one party pleads that multiple parties did an act, without identifying which party did what specifically; or when one party pleads multiple claims, and does not identify which specific facts are allocated to which claim." Hughey v. Camacho, No. 2:13-cv-2665-TLN-AC, 2014 WL 5473184, at *4 (E.D. Cal. Oct. 23, 2014); see also Harrell v. Hornbrook Cmty. Serv. Dist., No. 2:14-cv-01595-KJM-GGH,

---

[3] See Kearney v. Salomon Smith Barney, Inc., 39 Cal.4th 95, 116 n.6 (2006).

2015 WL 5329779, at *10 (E.D. Cal. Sept. 10, 2015).  Thus, if the factual elements of a cause of action are present but are scattered throughout the complaint and not organized into a "short and plain statement of the claim," dismissal for failure to satisfy Rule 8 is proper.  McHenry, 84 F.3d at 1178.

As detailed herein, § 631(a) of CIPA identifies four distinct and separate theories of recovery.  See, e.g., In re Google Inc., No. 13-MD-02430-LHK, 2013 WL 5423918, at *20 (N.D. Cal. Sept. 26, 2013) (discussing differences in coverage between first and second clauses of § 631(a), and Legislature's intent for the two clauses to apply to different types of communications).  However, Plaintiff does not identify separate counts for each theory under which she claims Defendant violated CIPA; instead, Plaintiff merely block quotes § 631(a) and states "Defendant does all three."  (Compl. ¶ 27.)  Apart from the impermissibly conclusory nature of this allegation, the claim is further confusing because Plaintiff combines the third and fourth provisions of § 631(a) and only identifies three provisions under the statute.  The subsequent five paragraphs included in this cause of action in the complaint are not labeled in any manner, and it is unclear to which of the "three" identified provisions Plaintiff contends they apply.  The result is a shotgun pleading, in which Plaintiff fails to identify which specific facts are allocated to which claim.  Hughey, 2014 WL 5473184, at *4.  On this basis, dismissal with leave to amend is warranted.[4]  See Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

The Court also finds problematic Plaintiff's identification of the alleged third party with which Defendant purportedly shared the at-issue communications to be either "Hubspot *and/or* Salesforce," (Compl. ¶ 11 (emphasis added).)  The failure to clearly identify with which entity Defendant allegedly aided/abetted/conspired to violate Plaintiff's privacy rights also runs afoul of Rule 8's notice pleading requirement.  See McHenry, 84 F.3d at 1178.

Plaintiff's failure to identify the date of the at-issue incident, beyond the vague assertion that the purported violation occurred sometime "within the past year" (Compl. ¶ 17) also renders

---

[4] In her opposition, Plaintiff notes § 631(a) has four distinct clauses, and argues all four clauses are at issue here. (ECF No. 14 at 13.)  In general, the Court may not consider facts asserted for the first time in the briefings of a motion to dismiss and not in the complaint.  Nevertheless, because Plaintiff appears to allege Defendant violated § 631(a) in its entirety, the Court shall construe the complaint to assert Defendant violated all four provisions of § 631(a) and shall address each provision of § 631(a) in turn.

the complaint and alleged causes of action impermissibly vague.  As Plaintiff notes, the putative class members are believed to be in the thousands, with innumerable visits to the Defendant's website "within the past year."  Such allegation fails to provide enough detail to guide discovery, McHenry, 84 F.3d at 1178; for this reason, too, the complaint runs afoul of Rule 8 and must be dismissed.

      2.   <u>Violations of California's Invasion of Privacy Act § 631(a)</u>

Plaintiff's first cause of action asserts violations of CIPA § 631(a).  (Compl. ¶¶ 27–32.) Section 631 of the Act addresses "wiretapping."  It applies to:

> Any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by … [describing fines and sentencing].

Cal. Penal Code § 631(a).

The California Supreme Court has interpreted § 631(a) to contain three operative clauses, which cover three distinct and mutually independent patterns of conduct: (1) "intentional wiretapping," (2) "willfully attempting to learn the contents or meaning of a communication in transit over a wire," and (3) "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities."  <u>Mastel v. Miniclip SA</u>, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021) (citing <u>Tavernetti v. Superior Ct.</u>, 22 Cal. 3d 187, 192 (1978); <u>accord</u> <u>In re Google Inc.</u>, 2013 WL 5423918, at *15).  Section 631(a) further contains a fourth basis for liability, for anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the" other three bases

1   for liability.  Id. (citing Cal. Penal Code § 631(a)).

2         Plaintiff claims Defendant violates all sections of § 631(a).  (Compl. ¶ 27.)  Defendant

3   argues Plaintiff fails to state a claim under § 631 because her allegations are vague and

4   conclusory, as discussed herein.  (ECF No. 12 at 9–16.)

5         **a.      Intentional Wiretapping**

6         Defendant first argues that Plaintiff's claim under § 631(a) fails because Defendant cannot

7   wiretap its own website.  (Id. at 10–11.)

8         Under § 631(a), if a person secretly listens to another's conversation, the person is

9   liable.  Ribas v. Clark, 38 Cal. 3d 355, 359 (1985); see also Thomasson v. GC Servs. Ltd.

10  P'ship, 321 Fed. App'x. 557, 559 (9th Cir. 2008) ("California courts interpret 'eavesdrop,' as

11  used in § 632, to refer to a third party secretly listening to a conversation between two other

12  parties.").  Only a third party, however, can listen to a conversation "secretly."  Rogers v. Ulrich,

13  52 Cal. App. 3d 894, 899 (1975); Warden v. Kahn, 99 Cal. App. 3d 805, 811 (1979) (holding §

14  631, "which is quite ambiguous, has been held to apply only to eavesdropping by a third party

15  and not to recording by a participant to a conversation."); see also Powell v. Union Pac. R. Co.,

16  864 F. Supp. 2d 949, 954–56 (E.D. Cal. 2012) (Mueller, K.) (granting summary judgment on §

17  631(a) claim for defendant who was a party to the call) (citations omitted); Javier v. Assurance

18  IQ, LLC, No. 20-cv-02860-CRB, 2023 WL 114225, *4–6 (N.D. Cal. Jan. 5, 2023) (concluding if

19  party to communication is recording, there is no claim; if third party is recording it, there is a

20  claim); Membrila v. Receivables Performance Mgmt., LLC, No. 09–CV–2790–IEG (RBB), 2010

21  WL 1407274, at *2 (S.D. Cal. Apr. 6, 2010) ("Plaintiff's claim for violation of Section 631 fails,

22  because this section applies only to eavesdropping by a third party and not to recording by a

23  participant to a conversation.").  By contrast, a party to a communication can record it (and is not

24  eavesdropping when it does).  See In re Facebook, Inc. Internet Tracking Litig., 956 F.3d 589,

25  607 (9th Cir. 2020) ("Both [CIPA and the Wiretap Act] contain an exemption from liability for a

26  person who is a 'party' to the communication, whether acting under the color of law or

27  not."), cert. denied, No. 20-727, ––– U.S. ––––, 141 S. Ct. 1684 (U.S. Mar. 22, 2021).  This is

28  ///

known as the "party exception" to liability.[5]   See id.

Here, Plaintiff does not sue the purported third party, "Hubspot and/or Salesforce," but only Defendant Sephora.  Defendant is undisputedly a party to the communication with Plaintiff arising from Plaintiff's use of the chat window on Sephora's website.  Thus, to the extent Plaintiff alleges Defendant recorded its own communications with her, Plaintiff fails to state a claim against Sephora under the first provision of § 631(a) as a matter of law.[6]

The Court notes Plaintiff's opposition is largely unresponsive to Defendant's brief.  For example, the first three pages of the opposition discuss Plaintiff's Article III standing to raise this claim (ECF No. 14 at 11–13), even though Defendant never raises this issue.  In another example, Plaintiff devotes several pages of her brief to argue her claim under § 631(a) is actionable because use of a smart phone satisfies the "telegraph" or "telephone" requirement, and Defendant's computer satisfies the "machine, instrument, or contrivance" requirement (see id. at 13–16); but, again, these are not issues raised in the motion to dismiss with respect to Plaintiff's claim under § 631(a).   And in yet another example, Plaintiff opposes an argument purportedly raised by Defendant that Plaintiff failed to allege it utilized a "landline telephone" (see id. at 27–28), which is never actually raised by Defendant in its motion to dismiss.[7]

---

[5] The Court notes Plaintiff argues In re Facebook stands for the opposition conclusion, based on a quote at page 608 of the reporter, in which the Ninth Circuit concluded that Facebook was not exempt from § 631(a) liability under the party exception.  (ECF No. 14 at 25.)  However, Plaintiff takes this quote out of context.  The party exception did not apply to defendant Facebook because, at the time it intercepted the user content, the users were logged out of the Facebook website and were accessing other websites; thus, Facebook was not considered a direct party to these "communications," but was more akin to a third-party eavesdropper, who is not protected by the party exception.

[6] This does not necessarily, however, preclude the possibility for liability under the fourth provision of § 631(a), for aiding or enabling a third party to receive the communications, which is also addressed herein.

[7] Defendant notes this disconnect likely results from Plaintiff's cutting and pasting various boilerplate allegations and arguments from other similar lawsuits counsel has initiated.  Plaintiff does not address the substantive (and meritorious) argument that her briefing is nonresponsive, but instead counters with arguments that the Court should disregard Defendant's "smear attack," which Plaintiff asserts violates the guidelines of civility and professionalism.  (ECF No. 14 at 34–35.)  To this line of argument, however, the Court cautions the parties and their counsel that because federal courts are courts of limited jurisdiction, it refuses to exercise "playground jurisdiction" over such matters; to that point, the use of unnecessarily inflammatory language lacking a substantive basis only serves to signal to the Court that a claim or defense is without merit and it may, in addition, hurt the reputations and credibility of counsel.  Furthermore, the Court is not required to ignore facts amenable to judicial notice and decide Defendant's motion in a vacuum.  To the contrary, the Supreme Court has directed courts to "draw on [their] judicial experience and common sense" when evaluating a complaint's allegations against Rule 8's pleading requirements.  Iqbal, 556 U.S. at 679.  Here, unquestionably, Plaintiff's counsel has brought numerous lawsuits under CIPA against various businesses that operate websites and the complaints in these lawsuits are virtually identical.  The observation of this fact is not irrelevant to the Court's plausibility analysis.  See, e.g., Byars v. Hot Topic, Inc. (Hot Topic), No. EDCV

However, as relevant to the instant motion, Plaintiff argues there is no party exemption under the first clause of § 631(a), and that the federal Wiretap Act, 18 U.S.C. §§ 2510 *et seq.*,[8] is distinguishable from § 631(a) on this point.  (See ECF No. 14 at 15–17.)  This argument is problematic for Plaintiff, as Defendant does not analogize CIPA to the Wiretap Act with respect to the direct party exemption.  Further, Plaintiff relies on a case arising from the Third Circuit Court of Appeals, Popa v. Harriet Carter Gifts, Inc., 45 F.4th 687 (3d Cir. 2022), to support her contention that CIPA differs from the Wiretap Act with respect to direct party liability.  (ECF No. 14 at 17.)  Plaintiff's reliance on such a case is misplaced: not only is Popa not controlling, it is also not persuasive, because Popa addresses distinctions between the Wiretap Act and a Pennsylvania privacy rights statute, with no indication that Pennsylvania's statute is comparable to California's statute.  Furthermore, the Ninth Circuit has stated that "[c]ourts perform the same analysis for both the Wiretap Act and CIPA regarding the party exemption."  In re Facebook, 956 F.3d at 607.

Plaintiff's reliance on People v. Conklin, 12 Cal. 3d 259 (1974) (ECF No. 14 at 17) is also misplaced.  In Conklin, the California Supreme Court merely held that the Wiretap Act did not preempt CIPA; it did not hold that the statutes were dissimilar for purposes of applying the party

---

22-1652 JGB (KKx), 2023 WL 2026994, at *5 (C.D. Cal. Feb. 14, 2023) (discussing "cookie cutter" lawsuits filed by Plaintiff's attorney, "[a]t the end of the day, Twombly-Iqbal pleading standards might be distilled to a single proposition: if a litigant pleads at such a high level of generality that it is possible to copy and paste a complaint word-for-word against a new defendant (at least after the unnumbered "introduction" section, where Plaintiff's Counsel has written the URL of the defendant of the day and referred to it as "the Website" so that he need not make a single other alteration to the rest of the complaint), then almost by definition he is pleading without the factual specificity necessary to state a claim for relief.").  The Court also notes that Plaintiff apparently did not bother to change the name of the pleading document for her complaint (simply titling it "Pleading Template").  In any event, to the extent the opposition does not clearly address the arguments plainly set forth in Defendant's briefing, the Court shall attempt to construe Plaintiff's arguments in opposition as they can best be ascertained, Retail Clerks, 373 U.S. at 753 n.6; however, the Court shall not raise arguments that were not properly raised by the parties.  Further, the Court shall disregard arguments in the opposition as to issues that were not raised by Defendant and are therefore outside the scope of the motion to dismiss, and it declines to deem such issues to be "waived" by Defendant. Relatedly, the Court also declines to consider facts newly asserted in the briefs which are not alleged in the complaint.  See Assoc. Gen. Contractors of Cal., Inc., 459 U.S. at 526.

[8] The Wiretap Act, as amended by the Electronic Communications Privacy Act of 1986 ("ECPA"), provides a private right of action against any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication."  18 U.S.C. § 2511(1)(a); see id. § 2520 (providing a private right of action for violations of § 2511).  Many courts have analogized CIPA to the Wiretap Act, 18 U.S.C. § 2511, based on their similarities.  See Brodsky v. Apple Inc., 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.").  To the extent applicable, this Court does the same.

exemption.

Conversely, Plaintiff argues Defendant's "heavy reliance" on <u>Rogers v. Ulrich</u> is misplaced.  (ECF No. 14 at 18–20.)  This argument is unavailing, however, as Plaintiff appears to reference <u>Rogers</u> for its definition of "eavesdropping" and "in transit," which is not the basis for which Defendant relies on <u>Rogers</u> with respect to clause one of § 631(a).  Plaintiff's other arguments concerning "unauthorized" recordings by a party to the conversation arising from § 632 of CIPA (ECF No. 14 at 18–20) or the application of CIPA to parties of the communication under § 632.7 (ECF No. 14 at 20–21), are equally inapplicable as neither § 632 nor § 632.7 is the statute that Plaintiff alleges was violated in her first cause of action.  Finally, the Court notes Plaintiff does not address the myriad of other California state and Ninth Circuit cases cited by Defendant which have unambiguously held that the first and second clauses of § 631(a) do not apply to direct parties to the communication.  Accordingly, Plaintiff's opposition is unavailing.

Plaintiff's claim for violations of the first clause of § 631(a) should therefore be dismissed, with prejudice.

**b.**      **Willfully Attempting to Learn the Contents or Meaning of a Communication in Transit Over a Wire**

The second clause of § 631(a) penalizes a party who "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication *while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state*…."  Cal. Penal Code § 631(a) (emphasis added).

Defendant argues that, not only does Plaintiff's claim fail as a matter of law because Sephora could not have, as a direct party to the communication, intercepted the communication, Plaintiff's claim under § 631(a) fails because Plaintiff fails to allege any communications were "in transit" when they were allegedly intercepted.  (ECF No. 12 at 11–13.)

Defendant's first argument is persuasive for the same reasons articulated with respect to the first clause of § 631(a).  Namely, courts agree that § 631(a)'s first and second clauses apply only to third parties and not to participants of a communication.  <u>Powell</u>, 864 F. Supp. 2d at 955

(collecting cases); In re Facebook, 956 F.3d at 607.  Again, Plaintiff does not purport to sue the unspecified third party, but only Defendant, who was undeniably a participant of the subject communication.  For this reason alone, Plaintiff fails to state a claim against Defendant based on the second clause of § 631(a).

As to Defendant's second argument, "intercept" is defined under federal wiretap law as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."  18 U.S.C. § 2510(4).  "Such acquisition occurs 'when the contents of a wire communication are captured or redirected in any way.' "  Noel v. Hall, 568 F.3d 743, 749 (9th Cir. 2009).  The Ninth Circuit has instructed that for a communication "to be 'intercepted' in violation of the Wiretap Act, it must be acquired during transmission, not while it is in electronic storage."  Konop v. Hawaiian Airlines, Inc., 302 F.3d 868, 878 (9th Cir. 2002) (holding the acquisition of email messages stored on an electronic system, but not yet retrieved by the intended recipients, is not an "interception" under the Wiretap Act).

Defendant argues that courts interpreting § 631(a) and the Wiretap Act have acknowledged that, because internet communications travel so quickly, there is only an incredibly narrow window during which an interception could occur; moreover, such transmissions may generally be improperly accessed either on the originating or receiving end, but are not typically intercepted during transmission.  (ECF No. 12 at 12); see also Mastel, 549 F. Supp. 3d at 1136–37 (noting "the crucial question under § 631(a)'s second clause is whether [plaintiff] has plausibly alleged that [defendant] read one of his communications while it was still in transit, i.e., before it reached its intended recipient"; and concluding plaintiff's allegations were insufficient where they did not show defendant intercepted any communications while they were "in transit," as they were "passing over" a line, wire, or cable, or as they were "being sent" or "received," but only that defendant obtained the content of the communications from previously-sent or previously-received communications); NovelPoster v. Javitch Canfield Grp., 140 F. Supp. 3d 938, 951 (N.D. Cal. 2014) (noting that, unless some type of routing software is used, interception of email within the prohibition of the Wiretap Act is virtually impossible).

Here, the factual allegations describe text communications via the chat platform on Defendant's website.   Plaintiff alleges the chat feature automatically records and creates transcripts of all online chats.  (Compl. ¶¶ 9, 11.)  Plaintiff also alleges Defendant allows Hubspot and/or Salesforce to "intercept [the transcripts] (during transmission and in real time)."   (Id. at ¶ 11.)   But this allegation is conclusory, as Plaintiff does not allege how the transcripts are intercepted simultaneously by Hubspot/Salesforce.  See Rodriguez v. Google LLC, No. 20-cv-04688-RS, 2022 WL 214552, at *1–2 (N.D. Cal. Jan. 25, 2022) (holding plaintiffs' conclusory statement that "communications are intercepted" and multiple use of the word "simultaneous" was insufficient to allege a § 631 claim for simultaneous interception where allegations described theory of "recording and then transmission, not interception"); Vizio Inc. Consumer Priv. Litig., 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (beyond conclusory allegation that defendant intercepted communications "during transmission," plaintiff's vague allegations that defendant's data collection occurs "in real time" were insufficient).   Rather, Plaintiff alleges Defendant records and creates transcripts of the chats, which Hubspot/Salesforce is then permitted to access; Plaintiff does not allege facts showing that Hubspot/Salesforce intercepted Plaintiff's communication itself.   Hubspot/Salesforce's access to the transcripts created by Sephora, therefore, does not spontaneously occur "during transmission," "in real time," but after the chat is transcribed.  See Rodriguez, 2022 WL 214552, at *2 ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible [the defendant] is intercepting their data in transit.").  Based on these allegations, the Court concludes Plaintiff has not alleged sufficient facts to show her communications were intercepted while "in transit."

Plaintiff's opposition is, again, largely off-point.  Plaintiff argues her claim for violations of § 631(a) under the second clause is actionable because, even if Defendant itself cannot be held liable as a direct party to the communication, it employed an independent third-party eavesdropper who violated the clause.  (See ECF No. 14 at 21–23.)  But the complaint does not allege that Defendant hired the third party.  Further, the cases Plaintiff cites in support of her argument are unavailing because there were third party defendants in those cases; in fact, these cases tend to refute Plaintiff's argument.  For example, in Saleh v. Nike, Inc., which Plaintiff

17

1   relies upon heavily, the plaintiff alleged defendants Nike and FullStory were recording his

2   communications with Nike.   Saleh, 562 F. Supp. 3d 503, 509 (C.D. Cal. 2021).   The court

3   unambiguously held the direct party exemption applied and dismissed the plaintiff's claims

4   against Nike as asserted under the second clause of § 631(a), finding Nike could only be held

5   liable under the fourth clause of § 631(a).   Saleh, 562 F. Supp. 3d 518–19; see also Licea II, 2023

6   WL 2469630, at *7 ("It is clear that Defendant was a party to the purported conversation with

7   Plaintiff and, as such, cannot be held liable under the second clause of section 631(a).   However,

8   Defendant can be held vicariously liable under the fourth clause if it assists a third party in

9   violating the second clause of section 631(a).").

10          Plaintiff also argues her allegations that her communications were intercepted by a third

11   party company while "in transit" should be taken as true at this stage in the pleadings.   (ECF No.

12   14 at 23–26.)   The Court disagrees.   As noted, on a motion to dismiss, factual allegations need to

13   be accepted as true, Cruz, 405 U.S. at 322; "legal conclusions cast in the form of factual

14   allegations" or "a formulaic recitation of the elements of a cause of action" do not, Chunie, 788

15   F.2d at 643 n.2; Twombly, 550 U.S. at 555.   As the Court noted, Plaintiff's allegations are

16   conclusions.   In opposition, Plaintiff discusses a software technology called "Session Replay,"

17   which "embeds snippits of code that watch and record, in real time, a visitor's every move on a

18   website, and which enables the website to capture data regarding visitors to the merchant's

19   website."   (ECF No. 14 at 23.)   The complaint does not allege this.   It alleges Defendant has

20   embedded code in its chat feature that creates transcripts of the chat, i.e., effectively completing

21   the communication; and the third party stores these transcripts.   See Adler v. Community.com,

22   Inc., No. 2:21-cv-02416-SB-JPR, 2021 WL 4805435, at *4 (C.D. Cal. Aug. 2, 2021) (where

23   cellular phone text message sent to intended number was also received by device paired with that

24   number, "Defendant's alleged access of that communication upon the completion of its

25   transmission to the proper number is not the sort of act contemplated by [the Wiretap Act].").   In

26   short, even assuming the direct party exception is inapplicable to the second clause, Plaintiff has

27   not alleged Defendant intercepted a communication for purposes of CIPA.

28          Plaintiff's claim for violations of the second clause of § 631(a) should therefore be

18

1    dismissed, with prejudice.

2            **c.      Attempting to Use or Communicate Information Obtained as a Result of
                        Engaging in Either of the Two Previous Activities**
3

4            A finding of a violation under the third clause of § 631(a) is contingent on a finding of a

5    violation of the first or second clause of § 631(a).  Because the Court concludes that Plaintiff has

6    failed to state a claim under either the first or second clause of § 631(a), Plaintiff's claim for

7    violations of § 631(a) under the third clause also fails.  See In re Google Assistant Privacy Litig.,

8    457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) ("Plaintiffs must establish that the information at issue

9    ... was obtained through a violation of the first or second clauses [of § 631(a)].  Because Plaintiffs

10   have not done so, they have also failed to plead a violation of the third clause.").  Furthermore,

11   because the only defendant in this action is Sephora, and the Court has determined Plaintiff's

12   claims under the first and second clause of § 631(a) fail, as asserted against Sephora, as a matter

13   of law due to the direct party exception, Plaintiff's claim for violations of the third clause of

14   §631(a) should also be dismissed with prejudice.

15           **d.      Aiding or Enabling a Third Party's Violation of § 631(a).**

16           The fourth clause of § 631(a) imputes liability against anyone "who aids, agrees with,

17   employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done

18   any of the" other three bases for liability.  Cal. Penal Code § 631(a).  Thus, while a party to a

19   communication may record the communication without triggering § 631(a) liability, it will be

20   subject to derivative liability where the third party is liable for recording the communications in

21   violation of the first, second or third clauses of § 631(a).[9]  Graham v. Noom, Inc., 533 F. Supp. 3d

22   823, 831–32 (N.D. Cal. 2021).

23           Here, Plaintiff alleges that Defendant allows Hubspot and/or Salesforce (independent

---

24   [9] The Court notes there may be a split of authority as to this point.  As observed by one court in the Central District of
     California case, Yoon v. Lululemon USA, Inc., "[c]ourts disagree over whether conversation participants can be
25   liable under [the fourth clause of § 631(a)] for aiding in wiretapping if they allow a third party to access the
     communication." Yoon, 549 F. Supp. 3d 1073, 1083 (C.D. Cal. 2021) (comparing Revitch v. New Moosejaw, LLC,
26   No. 18-cv-06827-VC, 2019 WL 5485330, at *2 (N.D. Cal. 2019) (conversation participants may be liable for
     conspiracy because § 631 "was designed to protect a person placing or receiving a call from a situation where the
27   person on the other end of the line permits an outsider to tap his telephone or listen in on the call") (citation omitted)
     with Powell, 864 F. Supp. 2d at 955 (conversation participants may not be liable for conspiracy to eavesdrop because
28   a party may record its own conversation) (collecting cases)).

third-party vendors) "to secretly intercept (during transmission and in real time), eavesdrop upon, and store transcripts of Defendant's chat communications with unsuspecting website visitors…." (Compl. ¶ 11.)   Defendant argues this is insufficient to state a claim.   (ECF No. 12 at 13–14.) Further, Defendant argues the claim fails because the common business practice of using software from a third-party vendor to facilitate customer website chats does not violate CIPA, as such software service providers are not third-party eavesdroppers but considered to be an extension of the company itself, and therefore protected by the party exception.

As to Defendant's first argument, the Court agrees Plaintiff fails to allege sufficient facts to state a claim for derivative liability pursuant to the fourth clause of § 631(a).   Notably, Plaintiff has not alleged any facts that "Hubspot and/or Salesforce" violated the first, second, or third clause of § 631(a).   The Court further notes it is problematic to her claims that Plaintiff has neither named a third-party defendant in this action, nor has clearly identified who the alleged third party "eavesdropper" is.   Rather, all of Plaintiff's allegations pertain to Defendant Sephora's actions, and no actions are attributed to the alleged third-party eavesdropper. See Mastel, 549 F. Supp. 3d at 1137 (holding "because Plaintiff has failed to establish an underlying violation, Plaintiff cannot maintain a claim against Defendant under the fourth clause because none of the alleged conduct that [defendant] allegedly "agreed to" or "aided" violated § 631(a)."); Johnson v. Blue Nile, Inc., No. 20-cv-08183-LB, 2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) (third party was not a third-party eavesdropper, therefore there was no wiretapping and defendant was not liable as an aider and abettor). Plaintiff has not identified the alleged third-party eavesdropper, she provides no description of what the third-party vendor does, what its relationship to Sephora is, how it intercepts Sephora's chat communications, or what it does with that information. Plaintiff has not alleged facts sufficient to show Hubspot *and/or* Salesforce is a third-party eavesdropper; therefore, she has not alleged facts sufficient to establish derivative liability against Defendant.   Graham, 533 F. Supp. 3d at 831–32.

As to Defendant's second argument, caselaw supports the contention that a third-party vendor that is deemed to merely facilitate customer chats as an extension of the company does not trigger derivative liability under § 631(a).   See id. at 832–33 (third party vendor that provided

software service that captured defendant's data, hosted data on vendor servers, and allowed defendant to analyze its own data was deemed an extension of defendant, and not a third party eavesdropper under § 631(a)); see also Johnson, 2021 WL 1312771, at *1 (third party vendor which used "session replay" software to record website activities of defendant's visitors was an extension of defendant); Yale v. Clicktale, Inc., No. 20-cv-07575-LB, 2021 WL 1428400, at *1, *3 (N.D. Cal. Apr. 15, 2021) (same, with "Event-Triggered Recorder" software).  Here, however, the face of the complaint is too deficient for the Court to conclude that Hubspot and/or Salesforce was hired by Sephora for this purpose.  It is vaguely suggested, albeit in entirely conclusory fashion, that Defendant allows the third party "to eavesdrop on [the Sephora chat communications] … to harvest data for financial gain." (Compl. at "Introduction".)  It is unclear, however, to which party Plaintiff attributes the "financial gain," or to what form of "financial gain" Plaintiff is referring; indeed, not a single specific fact in support of the contention that the third party "harvest[s] data for financial gain" is alleged.  See Hot Topic, 2023 WL 2026994, at *10 (finding plaintiff failed to state a claim under clause four of § 631(a) based on the same, single allegation).

The opposition does not present any substantive argument to address this point.  (See ECF No. 14 at 26–27.)  Nevertheless, the Court cannot say at this juncture that amendment of Plaintiff's § 631(a), clause four, claim would be futile.  Lopez, 203 F.3d at 1127, 1130.  Hence, while dismissal is appropriate, an abundance of caution recommends granting leave to amend.

**e.      Implied or Express Consent**

Finally, Defendant argues Plaintiff's claim under § 631(a) fails because Plaintiff consented to the recording and any potential "interception" of her communications.  (ECF No. 12 at 14–16.)  Defendant's argument, however, is premised on the screenshot of the Sephora chat box that is the subject of Defendant's request for judicial notice.  Because the Court recommends denial of Defendant's request for judicial notice, Defendant's argument based on facts and allegations not alleged in the complaint, is unavailing.

Furthermore, Plaintiff has sufficiently alleged she did not consent to any "recording" or "interception" of her communications with Defendant.  (Compl. ¶¶ 12, 19, 20; see also ECF No.

14 at 28–32.)  Whether the actual website chat box Plaintiff used contained notice of recording, whether Plaintiff was able to access Sephora's privacy policy from the purported link on the chat box, and whether the privacy policy contains sufficient notice of recording, for example, are facts that must be developed and asserted at a later stage of the litigation.  Thus, Defendant's fact-based defense of implied or express consent, which is not apparent on the face of the complaint, is unavailing at the motion to dismiss stage.

In sum, viewing the allegations as true and accepting all reasonable inferences in her favor, the Court finds Plaintiff fails to state a claim for violation of § 631(a).  See Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1140 (9th Cir. 2012).  Plaintiff's claim as asserted against Defendant Sephora under the first, second, and third clauses of § 631(a) fails as a matter of law; and Plaintiff fails to allege facts sufficient to state a claim as asserted against Defendant Sephora under the fourth clause of § 631(a).  The motion to dismiss Plaintiff's first cause of action for violations of § 631(a) of CIPA should therefore be granted with leave to amend.

### 3. Violations of California's Invasion of Privacy Act § 632.7

Plaintiff's second cause of action asserts violations of CIPA pursuant to § 632.7.  (Compl. ¶¶ 33–40.)  California Penal Code § 632.7, which provides for civil in addition to criminal liability, pertains to "cordless or cellular radio telephones; intentional recordation of communications without consent; punishment; [and] exceptions."  It applies to:

> (a) Every person who, without the consent of all of the parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between [1] two cellular radio telephones, [2] a cellular radio telephone and a landline telephone, [3] two cordless telephones, [4] a cordless telephone and a landline telephone, [5] or a cordless telephone and a cellular radio telephone, ….

Cal. Penal Code § 632.7(a).  Subdivision (b) of § 632.7 provides for certain exceptions to this prohibition, and subdivision (c) defines or explains some of the terms as used within the section.  Cal. Penal Code §§ 632.7(b)–(c).  As relevant here, "communication" is defined to include "communications transmitted by voice, data, or image, including facsimile."  Cal. Penal Code § 632.7(c)(3).

1    Defendant argues Plaintiff fails to allege necessary facts to state a claim under § 632.7.

2    (See ECF No. 17 at 12.)  Further, Defendant argues Plaintiff fails to state a claim under § 632.7 as

3    a matter of law because § 632.7 does not apply to internet communications, such as those at issue

4    in the instant action.  (ECF No. 12 at 17–18.)  The Court agrees as to both counts.

5         Under California law, statutory interpretation "begins with the words themselves ...

6    because the words generally provide the most reliable indicator of [legislative] intent."  Herrera v.

7    Zumiez, Inc., 953 F.3d 1063, 1071 (9th Cir. 2020).  "[I]f there is no ambiguity in the language,

8    we presume the Legislature meant what it said and the plain meaning of the statute governs."

9    Murphy v. Kenneth Cole Prods., Inc., 40 Cal. 4th 1094, 1103 (2007).

10        Here, the plain text of § 632.7 indicates an exclusive list of five types of calls to which §

11   632.7 applies: (1) two cellular radio telephones; (2) a cellular radio telephone and a landline

12   telephone; (3) two cordless telephones; (4) a cordless telephone and a landline telephone; and (5)

13   a cordless telephone and a cellular radio telephone.  Cal. Penal Code § 632.7(a).  Thus, the

14   unambiguous meaning of the statute is that it only applies to communications facilitated between

15   two telephones.   The California Supreme Court's discussion of § 632.7 supports this

16   straightforward reading of the statute.   It found that, in enacting § 632.7, the California

17   Legislature was "[r]esponding to the problem of protecting the privacy of parties to calls

18   involving cellular or cordless telephones[.]"  Flanagan v. Flanagan, 27 Cal. 4th 766, 776 (2002).

19   "It protects against intentional, nonconsensual recording of *telephone conversations* regardless of

20   the content of the conversation or the *type of telephone* involved."  Id. at 581–82 (emphasis

21   added).  Countless California state and federal district courts have relied on Flanagan in support

22   of this interpretation.  See, e.g., Hataishi v. First Am. Home Buyers Prot. Corp., 223 Cal. App.

23   4th 1454, 1469 (2014) (noting that determining "what type of telephone was used to receive the

24   subject call" is an element of a § 632.7 claim); Moledina v. Marriott Int'l, Inc., No. 2:22-cv-

25   03059-SPG-JPR, 2022 WL 16630276, at *7 (C.D. Cal. Oct. 17, 2022) (quoting the language of §

26   632.7 and finding that it applies to communications between "a cellular telephone and another

27   telephone"); Kahn v. Outrigger Enters., Inc., No. 2:13-cv-03802-SVW-JCx, 2013 WL 12136379,

28   at *3 (C.D. Cal. Oct. 29, 2013) (quoting Senate Committee on Judiciary, AB 2465, at 2 (Jun. 9,

1992) (discussing purpose of amendment to § 632.7 is to extend privacy protections for communications carried over landline telephones to communications carried over radio telephones)).

Plaintiff does not dispute this plain reading of § 632.7 that communications must be completed between two telephones, as set forth under one of the five listed types of calls. Nevertheless, Plaintiff does not allege two telephones were utilized to facilitate the at-issue communications. Instead, Plaintiff alleges that she used a smartphone, i.e., "a cellular telephone[] with an integrated computer to enable web browsing," and had a conversation with Defendant via its "website chat feature." (See Compl. at ¶¶ 13, 17; see also ECF No. 14 at 14.) To this point, Plaintiff argues there is no language in CIPA that defines the term "telephone" as excluding a smartphone;[10] therefore, Plaintiff argues she properly alleges that her communications with Defendant were "transmitted from a 'cellular radio telephone' as defined by CIPA." (Compl. ¶ 17; see also ECF No. 14 at 14).) The Court must express some skepticism regarding Plaintiff's proposed construction of the statute.[11] However, even assuming that Plaintiff's use of a smartphone to access an internet website's chat feature satisfies Plaintiff's side of the telephone requirement of § 632.7, Plaintiff's allegations remain deficient because she has not alleged that Defendant also used a cellular radio, cordless, or landline telephone on the other side of the

---

[10] The Court notes Plaintiff's statutory intent argument is flawed, in that she has it backwards. The Legislature has had an opportunity to amend the applicable sections of CIPA to take into account privacy issues raised by new technologies like internet messaging (as it did with the amendments in 1985, 1990, and 1992, which *expanded* the statute "to take account of privacy issues raised by the increased use of cellular and cordless phones"); it has refused to do so. See e.g., Licea I, 2023 WL 2415592, at *6 (noting multiple amendments to CIPA in which the Legislature declined to add protections for internet communications: Cal. Penal Code §§ 631 (amended 1988, 1992, 2011, 2022), 632 (amended 2016), 633 (amended 2018), 633.5 (amended 2017), 633.6 (same), 633.8 (amended 2011), 636 (same), 637 (same), and 637.2 (amended 2016)). Contrary to Plaintiff's arguments, the Legislature's refusal to further amend the statute is indicative of its intent *not to expand* protections.

[11] As several district courts have noted, while a smartphone may fall under the category of a "cellular radio telephone" as contemplated by § 632.7 while it is being used to make a phone call, it does not necessarily follow that a smartphone should also be deemed a "cellular radio telephone" under § 632.7 while it is being used to perform functions not typical to a cellular phone but rather to a computer, such as accessing the internet. See, e.g., Licea I, 2023 WL 2415592, at *5 (declining to find CIPA applied to smartphones "which are wireless, despite their use of communication technologies which then are comprised of 'wire[s], line[s], cable[s], or instrument[s]' " because "[p]lain interpretation and caselaw dictate that Plaintiffs' preferred interpretation is not consistent with the language of [clause one of § 631(a)] … which refers to specific technology."; Mastel, 549 F. Supp. 3d at 1135 (holding "[a]lthough iPhones contain the word 'phone' in their name, and have the capability of performing telephonic functions, they are, in reality, small computers.").

communication.  To the contrary, Plaintiff concedes in her opposition briefing that Defendant received the communication through computer equipment.  (See ECF No. 14 at 27.)  Thus, Plaintiff has failed to allege facts sufficient to state a claim for violations of § 632.7.

In opposition, Plaintiff advances a number of arguments, all of which the Court finds to be unavailing.  First, Plaintiff argues § 632.7 only requires one party to the conversation to be using a cellular phone in order for the prohibitions of § 632.7 to apply.  (ECF No. 14 at 16, 27–28.) Notably, in asserting this argument, Plaintiff appears to concede she did not sufficiently allege Defendant's use of a qualifying telephone device under the statute.  Furthermore, the argument is ineffective because it is clearly contrary to § 632.7's five express communication scenarios (*i.e.*, calls between (1) two cellular radio telephones; (2) a cellular radio telephone and a landline telephone; (3) two cordless telephones; (4) a cordless telephone and a landline telephone; and (5) a cordless telephone and a cellular radio telephone).  See Cal. Penal Code § 632.7(a).).  Common sense and a plain reading of this section dictate that the devices of both sender and receiver to the communication must be identified in order to establish the applicability of the section and therefore a viable claim under § 632.7.  In fact, California courts note this is a requirement.  See, e.g., Hataishi, 223 Cal. App. 4th at 1469 (holding that the type of telephone used on *both sides* of recorded communications must be proven) (emphasis added).

Nevertheless, Plaintiff argues the Central District of California case Byars v. Goodyear Tire and Rubber Co. is persuasive authority in support of her claim.  The Court finds it is not.  Far from persuasive, Goodyear appears to be an outlier case, in which the court, reviewing allegations nearly identical to the ones asserted in the instant litigation, held the plaintiff's smartphone categorially fell under the cellular phone category under § 632.7, and that § 632.7 applied to internet-based communications and written communications.  Goodyear, 2023 WL 1788553, at *5; see Hot Topic, 2023 WL 2026994, at *11 ("To this Court's knowledge, at least until [Goodyear], courts universally agreed that the statutory language of Section 632.7 would not apply in the context of text-based communications on a website.") (collecting cases).  Notably, Goodyear held there was no requirement that a plaintiff allege the type of telephonic device used by the defendant because there was no caselaw indicating this requirement, Goodyear, 2023 WL

1788553, at *5, which is the crux of Plaintiff's argument here. This Court finds Goodyear to be unpersuasive, however, and declines to adopt its rulings due to its "circumvent[ion of] the plain language of § 632.7," Hot Topic, 2023 WL 2026994, at *11, and faulty reliance on plainly distinguishable caselaw to reach the aforementioned holdings.

In particular, Goodyear relied on McCabe v. Six Continents Hotels, Inc., No. 12-cv-04818 NC, 2014 WL 465750 (N.D. Cal. Feb. 3, 2014), a Northern District of California case. As aptly noted by another Central District of California court in a subsequent case, significant factual distinctions exist in McCabe which render Goodyear's reliance on it inappropriate:

> Goodyear cites [McCabe] for the proposition that Section 632.7 may apply where only "one of the parties is using a cellular or cordless telephone." 2023 WL 1788553, at *5. It then rejected the argument that Ms. Byars failed to allege that the text-based communications occurred between two telephone devices, holding that "there is no requirement that Byars allege the type of telephonic device used by Goodyear." Id. at *5. As explained below, that may be true within a narrow context, but Goodyear's reasoning rests on the false premise that Goodyear was using a telephone at all: the allegations there, as here, make it abundantly clear that it was not using a telephone, for Goodyear, like Hot Topic, was accused of "embed[ing] code into its chat feature that allows Goodyear to record and transcribe" text-based communications. Id. at *1. Plaintiff admits as much: she asks the Court to construe "Defendant's computer equipment" as the "functional" equivalent of a "landline telephone." … McCabe also does not support the broad proposition that Goodyear cited it for. McCabe rejected a predictable but unpersuasive argument by a defendant essentially asking the court to hold that the plaintiff needed to have ruled out a remote possibility in order to plausibly allege an element: the defendant argued that it could have been using Voice Over Internet Protocol (VoIP) technology to record phone calls, as opposed to an ordinary telephone … McCabe's rejection of the argument made perfect sense, because VoIP telephone calls are similar to traditional telephony in almost every meaningful respect as it relates to an individual's right to privacy, and there was no doubt whatsoever that the facts in McCabe involved telephone calls between two users using some kind of telephonic device: the plaintiffs alleged that they called the defendant's "call centers from a cellular phone in California" and the call centers recorded their calls without their consent ….

Hot Topic, 2023 WL 2026994, at *11 (internal citations omitted). This Court similarly declines to find Goodyear persuasive, and elects instead to adopt the interpretation of § 632.7 derived from its plain reading, joining the rulings articulated by the apparent majority of California state and district courts substantively addressing this issue. See, e.g., id. at *10–12; Flanagan, 27 Cal. 4th

1  at 581–82; Hataishi, 223 Cal. App. 4th at 1469; Moledina, 2022 WL 16630276, at *7; Kahn, 2013

2  WL 12136379, at *3–5; Licea I, 2023 WL 2415592, at *11–13; Montantes v. Inventure Foods,

3  No. CV-14-1128-MWF (RZx), 2014 WL 3305578, at *4–6 (C.D. Cal. Jul. 2, 2014).  Plaintiff's

4  arguments in reliance on Goodyear are, therefore, rejected.

5      Alternatively, Plaintiff argues the Court should construe Defendant's computer

6  equipment, which connected with her smartphone to transmit and receive the chat

7  communications, as a "landline telephone."  (ECF No. 14 at 27.)  In support of this argument,

8  Plaintiff further argues "it is beyond dispute that the internet works through a series of networks

9  that connect devices around the world through telephone lines."  (Id. (inner quotation marks and

10  citation omitted).)  The Court must, again, disagree.[12]

11      As previously noted, the plain text of § 632.7 implicates an exclusive list of five types of

12  calls.  According to this list, a communication covered by § 632.7 must have a cellular radio or

13  cordless telephone on one side, and a cellular radio, cordless, or landline telephone on the other

14  side.  The Legislature defined a cellular radio telephone and a cordless phone.  It did not define a

15  landline telephone.  However, the statute only references "frequency bandwidth reserved for

16  cellular radio telephones," "frequency bandwidths reserved for cordless telephones," and "public

17  switched telephone network," which suggests the Legislature intended only to include

18  communications through telephone technology.  Further, the inclusion of a broad definition of

19  communication (which "includes, but is not limited to, communications transmitted by voice,

20  data, or image, including facsimile") does not support Plaintiff's conclusion that the Legislature

21  meant to include new and emerging technologies, but rather that it meant to protect a broad range

22  _____

23  [12] Incidentally, the Court notes Plaintiff's assumption regarding the internet is incorrect.  As previously noted by this
Court, myriad legal authority demonstrates there are numerous ways to transmit communications via the internet,

24  such as by cable modem service using cable lines, digital subscriber lines using local telephone wires, terrestrial-
based wireless networks, and satellite-based wireless networks.  See G & G Closed Cir. Events, LLC v. Infante, No.
1:20-cv-01400-JLT-SAB, 2022 WL 411847, at *13 (E.D. Cal. Feb. 10, 2022), report and recommendation adopted,

25  2022 WL 1082567 (E.D. Cal. Apr. 11, 2022) (citing Nat'l Cable & Telecommc'ns Ass'n v. Brand X Internet Servs.,
545 U.S. 967, 975 (2005) and collecting cases).  Determining which method of transmission was utilized to facilitate

26  a specific communication thus requires a fact-specific determination that is often disputed.  See id. at *14–18
(discussing legislative history and statutory interpretation of Wiretap Act, as contemplated in relation to claims of

27  unauthorized interception and publication of cable programming under 47 U.S.C. §§ 553 and 605(a)).  Therefore,
allegations that Defendant accessed the communication "via the internet" without more, does not create a

28  presumption that Defendant's computer equipment was being used at that time in any way akin to a landline
telephone and Plaintiff's allegations are insufficient.

of information transmitted over telephone technology.  See Cal. Penal Code § 631.

Because the statute is unambiguous, it is not necessary for this Court to look to the legislative history.  However, as the Court previously noted (see n.10), the legislative history confirms a plain reading of the statute does not extend protection to communications over the internet.  Rather, the Legislature's intent to leave the coverage of § 632.7 to communications made over telephones is indicated by the fact that the Legislature has amended CIPA many times without altering that list.  Notably, the Legislature amended § 632.7 in June 2022, but did not include internet or web communications in its scope.  See Cal. Legis. Serv. Ch. 27 (S.B. 1272) (amending § 632.7, eff. Jan. 1, 2023).  In fact, the amendments added an exemption from liability for "telephone companies," further indicating that this statute is limited to telephone communications.  Thus, the Court concludes Plaintiff's argument that Defendant's computer equipment should be construed as a "landline telephone" under the statute is unavailing.

In sum, the Court concludes that § 632.7 only applies to the five types of calls previously enumerated.  Plaintiff does not adequately allege a claim under § 632.7 because her pleadings do not allege she communicated with Defendant using telephone technology.  Plaintiff's allegations that she and Defendant communicated via "telephony" are conclusory and do not suffice to "nudge" her CIPA claim "across the line from conceivable to plausible."  Iqbal, 556 U.S. at 680.  Further, as Plaintiff has conceded that Defendant used computer equipment to access the internet to receive her communication, amendment would be futile.  Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008).  Accordingly, the Court concludes Plaintiff fails allege facts sufficient to state a claim against Defendant for violations of § 632.7, and her claim fails as a matter of law.  Therefore, Defendant's motion to dismiss the second cause of action should be granted, without leave to amend.

4.    Request for Punitive Damages

Defendant challenges Plaintiff's request for punitive damages, on the basis that CIPA does not explicitly authorize punitive damages.[13]  (ECF No. 12 at 18.)  Furthermore, even if punitive

---

[13] Defendant cites cases which, in addition to the Court's independent research, appear to support a finding that punitive damages are unavailable for violations of CIPA.  This includes California district court cases in which the court declined to award punitive damages under CIPA and dismissed such claims based on findings that such relief

1    damages are available under the Act, Defendant argues this request for relief must be dismissed

2    because Plaintiff's allegations are wholly conclusory.  (ECF No. 12 at 18–19.)

3         The Court finds Plaintiff fails to allege facts sufficient to establish she is entitled to

4    punitive damages.  California Civil Code § 3294 ("§ 3294") provides that in an action "for breach

5    of an obligation not arising from contract," a plaintiff may seek punitive damages "where it is

6    proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud,

7    or malice."  Cal. Civ. Code § 3294(a).  "Malice" is defined as "conduct which is intended by the

8    defendant to cause injury to the plaintiff or despicable conduct which is carried on by the

9    defendant with a willful and conscious disregard of the rights and safety of others."  Cal. Code

10   Civ. Proc. § 3294(c)(1).  "Oppression" is defined as "despicable conduct that subjects a person to

11   cruel and unjust hardship in conscious disregard of that person's rights"  Cal. Code Civ. Proc. §

12   3294(c)(2).  "Fraud" is defined as "an intentional misrepresentation, deceit, or concealment of a

13   material fact known to the defendant with the intention on the part of the defendant of thereby

14   depriving a person of property or legal rights or otherwise causing injury."  Cal. Code Civ. Proc.

15   § 3294(c)(3).  "Punitive damages are never awarded as a matter of right, are disfavored by the

16   law, and should be granted with the greatest of caution and only in the clearest of cases."  Yeager

17   v. Corrs. Corp. of Am., No. 1:12-cv-00162 AWI JLT, 2012 WL 1067209, at *4 (E.D. Cal. Mar.

18   28, 2012) (internal citations omitted).  Thus, California district courts have dismissed a punitive

19   damages claim when a plaintiff fails to provide any factual basis supporting a finding of malice,

20   fraud or oppression.  See, e.g., Kinkade v. Trojan Express LLC, No. SACV 08-1362 AG (ANx),

21   2009 WL 799390, at *5 (C.D. Cal. Mar. 23, 2009) ("Simply pleading the terms 'oppression,

22

23   was not available under these claims.  See, e.g., Powell, No. CIV. S-09-1857 KJM-CKD, 2012 WL 3647715, at *5
     (E.D. Cal. Aug. 22, 2012) (plaintiff not entitled to punitive damages under Cal. Penal Code § 637.2 where he failed

24   to show statutory remedy was inadequate (citing Turnbull & Turnbull v. ARA Transp., Inc., 219 Cal. App. 3d 811,
     826–27 (1990)); Bona Fide Conglomerate, Inc. v. SourceAmerica, No. 3:14-cv-00751-GPC-DHB, 2016 WL

25   3543699, at *10 (S.D. Cal. 2016) (noting lack of authority indicating punitive damages are awarded under CIPA and
     dismissing claim for punitive damages under CIPA); Russell v. Kronos Inc., No. 18-cv-04525-EMC (LB), 2019 WL

26   5485891, at *2 (N.D. Cal. Oct. 25, 2019) (determining from court's independent research that, under California law,
     punitive damages do not appear to be available under § 637.2).  In addition, the Court notes Plaintiff cites to no case

27   authority in support of her prayer for such relief.  Nonetheless, in its reply briefing, Defendant clarifies that "Sephora
     is not challenging Plaintiff's statutory right to damages under California law, rather Sephora is arguing that

28   Plaintiff has failed to plead facts that would support a punitive damages award."  (ECF No. 17 at 13.)  Accordingly,
     the Court does not reach the issue at this time as to whether punitive damages are available under CIPA as a matter of
     law.

1   fraud, and malice,' without alleging sufficient facts, is conclusory and does not in itself support a

2   punitive award ... because Plaintiffs do not sufficiently plead oppression, fraud, or malice, the

3   Complaint does not support a prayer for punitive damages.").

4          Plaintiff seeks punitive damages under her general prayer for relief (see Compl. at 10) but

5   not under her two CIPA causes of action (see id. at 7–10).  While "magic words" are not required

6   to survive a motion to dismiss, the Court notes the complaint is devoid of allegations relating to

7   malice, oppression, or fraud.   A complaint must contain facts showing more than the "sheer

8   possibility that a defendant has acted unlawfully," as "facts that are 'merely consistent with' a

9   defendant's liability" fall short of satisfying the plausibility standard, and "[t]hreadbare recitals of

10  the elements of a cause of action, supported by mere conclusory statements, do not suffice."

11  Iqbal, 556 U.S. at 678.  Here, Plaintiff asserts no factual allegations in support of her request for

12  punitive damages, let alone conclusory ones.  See Kelley v. Corr. Corp. of Am., 750 F. Supp. 2d

13  1132, 1148 (E.D. Cal. 2010) (finding failure to allege punitive damages where "[t]here is no

14  allegation, for example, of procedural gamesmanship, of any misrepresentation by Defendant or

15  of any expression of animus by Defendant during Plaintiff's period of worker's compensated time

16  off.").  In addition, having determined Plaintiff failed to allege facts sufficient to state a claim for

17  violations of CIPA, the Court concludes Plaintiff fails to allege entitlement to damages.   Thus,

18  Plaintiff has not alleged an adequate factual basis to support an award of punitive damages.

19         While Plaintiff challenges Defendant's argument that she fails to state a claim for punitive

20  damages, she does not expressly seek leave to amend to cure any pleading deficiencies.

21  Nevertheless, to the extent that leave to amend her CIPA claims is granted, and to the extent

22  Plaintiff may in good faith—and in consideration of the aforementioned legal authorities—do so,

23  the Court shall recommend granting leave to amend the prayer for damages.  Lopez, 203 F.3d at

24  1130.

25         **C.     Leave to Amend**

26         Under Rule 15(a), leave to amend "shall be freely given when justice so requires,"

27  because "the court must remain guided by the underlying purpose of Rule 15 … to facilitate

28  decisions on the merits, rather than on the pleadings or technicalities."  Lopez, 203 F.3d at 1127

1   (alterations and internal quotation marks omitted).  "[The] district court should grant leave to

2   amend even if no request to amend the pleading was made, unless it determines that the pleading

3   could not possibly be cured by the allegation of other facts."  Id. at 1130 (quoting Doe v. United

4   States, 58 F.3d 484, 497 (9th Cir. 1995)); see also Gardner v. Martino, 563 F.3d 981, 990 (9th

5   Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be

6   futile).

7          Nevertheless, a district court need not grant leave to amend where the amendment would

8   unduly prejudice the opposing party, cause undue delay, or be futile, or if the party seeking

9   amendment has acted in bad faith or with dilatory motive.  Leadsinger, Inc., 512 F.3d at 532

10  (citing Foman v. Davis, 371 U.S. 178, 182 (1962)); see also Carvalho v. Equifax Info. Servs.,

11  LLC, 629 F.3d 876, 892–93 (9th Cir. 2010) (quoting Foman, 371 U.S. at 182) (leave to amend

12  may be denied based on repeated failure to cure deficiencies by amendments previously allowed).

13  "The decision of whether to grant leave to amend nevertheless remains within the discretion of

14  the district court."  Leadsinger, Inc., 512 F.3d at 532.  Furthermore, "the court's discretion to

15  deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint."

16  Ecological Rights Found. v. Pac. Gas & Elec. Co., 713 F.3d 502, 520 (9th Cir. 2013) (quoting

17  Miller v. Yokohama Tire Corp., 358 F.3d 616, 622 (9th Cir. 2004)).

18         Here, Defendant seeks dismissal of the complaint, in its entirety, with prejudice.  (ECF

19  No. 12 at 19.)  The Court is skeptical that further amendment will cure the aforementioned

20  pleading defects inherent in Plaintiff's CIPA claims.  Nevertheless, for the aforementioned

21  reasons, the Court cannot conclude at this point that amendment as to Plaintiff's first cause of

22  action under the fourth clause of § 631(a) would be futile.  Accordingly, the Court finds Plaintiff

23  should be granted one final opportunity to amend her complaint, consistent with the findings

24  herein.

25                                         **IV.**

26                       **CONCLUSION AND RECOMMENDATION**

27         Accordingly, based on the foregoing, IT IS HEREBY RECOMMENDED that:

28         1.      Defendant Sephora USA, Inc.'s motion to dismiss (ECF No. 12) be GRANTED

                                           31

with leave to file an amended complaint as to the first cause of action only, consistent with this order, and that the second cause of action be dismissed without leave to amend; and

2.   Plaintiff be ordered to file the first amended complaint **within thirty (30) days** of issuance of any order adopting the findings and recommendations.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 30, 2023**

UNITED STATES MAGISTRATE JUDGE

32